UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:24-CR-80052-RLR

UNITED STATES OF AMERICA

vs.

TIMOTHY E. MARIS,

   Defendant.
_____/

## PLEA AGREEMENT

  The United States Attorney's Office for the Southern District of Florida and Timothy E. MARIS (hereinafter referred to as the "defendant") enter into the following agreement:

  1. The defendant agrees to plead guilty to Counts 1, 2 and 3 of the Superseding Information, which charge as follows: Count 1, attempted production of child pornography, in violation of Title 18, United States Code, Section 2551(a)&(e); Count 2, receipt of child pornography, in violation of Title 18, United States Code, Section 2552A(a)(2) & (b)(1); and Count 3, distribution of obscene visual representations of the sexual abuse of children, in violation of Title 18, United States Code, Section 1466A(a)(1). The defendant agrees that he is, in fact, guilty of these offense.

  2. The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered.

The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines.

3. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offenses identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

4. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, this Office, or the probation office, is a prediction, not a promise, and is not binding on this Office, the probation office or the Court. The defendant understands and acknowledges, as previously acknowledged in paragraph 3 above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, this Office, or a recommendation made jointly by the defendant and this Office.

5. The defendant understands and acknowledges that as to Count 1, the Court must impose a minimum term of imprisonment of fifteen (15) years and may impose a maximum term of thirty (30) years. The defendant also understands and acknowledges that as to Counts 2 and 3, the Court must impose a minimum term of imprisonment of five (5) years and may impose a

maximum term of twenty (20) years. These terms of imprisonment may run concurrently or consecutively. The Court must also impose a term of supervised release of at least 5 years up to life to follow the term of imprisonment. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $250,000. The defendant also understands and agrees that the Court will order the defendant to pay restitution to any identified victims of child pornography as further detailed in paragraphs 8 through 10, *infra*.

6. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 5 of this agreement, pursuant to 18 U.S.C. Section 3013, a special assessment in the amount of $100 will be imposed on the defendant, as to each count. The defendant agrees that this special assessment shall be paid at the time of sentencing. If the financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

7. The defendant further understands and acknowledges that, pursuant to Title 18, United States Code, Section 3014, a special assessment in the amount of $5,000 will be imposed on the defendant if he is not indigent and is pleading guilty, as to Counts 1 and 2, as both are offenses under Chapter 110. The defendant agrees that this special assessment shall not be payable until the defendant has satisfied all outstanding court-ordered fines, orders of restitution, and any other obligation related to victim-compensation arising from the criminal conviction, upon which this special assessment is based.

8. Pursuant to 18 U.S.C. § 3663A(a)(3), 18 U.S.C. § 3663A(a) & (b), 18 U.S.C. § 3664, 18 U.S.C. § 2248, and 18 U.S.C. § 2259, the parties agree that restitution is not limited to Count 1, 2 or 3, the offense of conviction in this case. In exchange for the government's decision to forgo additional charges including enticement of minors, the defendant agrees to pay restitution to the

child pornography victims uncovered from the defendant's digital devices, who will be identified when it becomes known to the government, either at or before the sentencing or restitution hearings. The defendant further agrees that restitution is due to the victims of child pornography for offenses listed in 18 U.S.C. § 3663A(c)(1)(A), that are not the offenses of conviction, but nonetheless gave rise to this plea agreement. The defendant agrees to pay not less than three thousand dollars ($3000 USD) to each identified and requesting victim of child pornography.

9. The defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw defendant's guilty plea. The defendant further agrees to comply with any restitution order entered into at the time of sentencing or restitution hearing. The defendant further agrees that he will not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding. The defendant agrees to make full restitution for the provable losses caused by defendant's activities.

10. The parties further understand and acknowledge that the amount of restitution the defendant will be ordered to pay will be calculated pursuant to 18 U.S.C. §§ 2259 and 2259A. Specifically, the Court will first determine the full amount of each victim's losses that were incurred, or are reasonably projected to be incurred by the victim, as a result of the trafficking of child pornography depicting the victim. The parties understand and acknowledge that, once the full amount of the victim's losses is determined, the Court will then order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000. The parties further understand and acknowledge that any individual victim's total aggregate recovery shall not exceed the full amount of that victim's demonstrated losses.

11. This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

12. The defendant agrees, in an individual and any other capacity, to forfeit to the United States, voluntarily and immediately, any right, title, and interest to any (a) visual depiction described in Title 18, United States Code, Sections 2251, 2251A, 2252, 2252A, 2252B, or 2260, or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped or received in violation of Title 18, United States Code, Chapter 110; (b) any property, real or personal, constituting or traceable to gross profits or other proceeds which the defendant obtained from such offense; and (c) any property, real or personal, used or intended to be used to commit or to promote the commission of such offense, and any property traceable to such property, pursuant to Title 18, United States Code, Section 2253(a); and (d) any obscene material produced, transported, mailed, shipped, or received in violation of Title 18, United States Code, Section 1466; (e) any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from such offense; and (f) any property, real or personal, used or intended to be used to commit or to promote the commission of such offense, pursuant to Title 18, United States Code, Section 1467(a).

13. The defendant further agrees that forfeiture is independent of any assessment, fine, cost, restitution, or penalty that may be imposed by the Court. The defendant knowingly and voluntarily agrees to waive all constitutional, legal, and equitable defenses to the forfeiture,

including excessive fines under the Eighth Amendment to the United States Constitution. In addition, the defendant agrees to waive: any applicable time limits for administrative or judicial forfeiture proceedings, the requirements of Fed. R. Crim. P. 32.2 and 43(a), and any appeal of the forfeiture.

14. The defendant also agrees to fully and truthfully disclose the existence, nature and location of all assets in which the defendant has or had any direct or indirect financial interest or control, and any assets involved in the offenses of conviction. The defendant agrees to take all steps requested by the United States for the recovery and forfeiture of all assets identified by the United States as subject to forfeiture. This includes, but is not limited to, the timely delivery upon request of all necessary and appropriate documentation to deliver good and marketable title, consenting to all orders of forfeiture, and not contesting or impeding in any way with any criminal, civil or administrative forfeiture proceeding concerning the forfeiture.

15. The United States agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing, the defendant's offense level is determined to be 16 or greater, this office will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted the authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently. However, the United States will not be required to make this recommendations if the defendant: (1) fails or refuses to make a full,

accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

16. The defendant is aware that Title 18, United States Code, Section 3742 and Title 28, United States Code, Section 1291 afford the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, including the forgoing of criminal charges for 18 USC § 2422(b) (attempted enticement of minors), the defendant hereby waives all rights conferred by Sections 3742 and 1291 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or an upward variance from the advisory guideline range that the Court establishes at sentencing. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b) and Title 28, United States Code, Section 1291. However, if the United States appeals the defendant's sentence pursuant to Sections 3742(b) and 1291, the defendant shall be released from the above waiver of appellate rights. By signing this agreement, the defendant acknowledges that the defendant has discussed the appeal waiver set forth in this agreement with the defendant's attorney. The defendant further agrees, together with this Office, to request that the Court enter a specific finding that the defendant's waiver of his right to appeal the sentence imposed in this case was knowing and voluntary.

17. Defendant understands that by pleading guilty, he will be required to register as a

sex offender upon his release from prison as a condition of supervised release pursuant to 18 U.S.C. § 3583(d). Defendant also understands that independent of supervised release, he will be subject to federal and state sex offender registration requirements, and that those requirements may apply throughout his life. Defendant understands that he shall keep his registration current, shall notify the state sex offender registration agency or agencies of any changes to defendant's name, place of residence, employment, or student status, or other relevant information. Defendant shall comply with requirements to periodically verify in person defendant's sex offender registration information. Defendant understands that he will be subject to possible federal and state penalties for failure to comply with any such sex offender registration requirements. Defendant further understands that, under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon defendant's release from confinement following conviction.

18. As a condition of supervised release, defendant shall initially register with the state sex offender registration in Florida, and shall also register with the state sex offender registration agency in any state where defendant resides, is employed, works, or is a student, as directed by the Probation Officer. Defendant shall comply with all requirements of federal and state sex offender registration laws, including the requirement to update defendant's registration information. Defendant shall provide proof of registration to the Probation Officer within 72 hours of release from imprisonment.

19. This is the entire agreement and understanding between the United States and the defendant. There are no other agreements, promises, representations, or understandings.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: July 8, 2024 By: _____
GREGORY SCHILLER
ASSISTANT UNITED STATES ATTORNEY

Date: July 8, 2024 By: _____
MARK EIGLARSH
ATTORNEY FOR THE DEFENDANT

Date: July 8, 2024 By: _____
TIMOTHY E. MARIS
DEFENDANT

Page **9** of **9**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CR-80052-RLR

UNITED STATES OF AMERICA

vs.

TIMOTHY E. MARIS,

Defendant.
_____/

## FACTUAL PROFFER

The United States of America and Timothy E. Maris ("Defendant" or "MARIS") agree that had this case gone to trial, the United States would have proven the following facts beyond a reasonable doubt:

1. In March of 2023, a Homeland Security Investigations (HSI) West Palm Beach (WPB) undercover Special Agent (herein referred to as "the UC") acted in an undercover capacity online on the mobile messaging application "Kik" to detect and investigate violations of federal law related to the sexual exploitation of children. The UC assumed the persona of a 28-year-old female with an 8-year-old daughter, herein referred to as Child1. The UC was monitoring numerous chatrooms including those created for individuals to discuss their interests in "taboo" sex, family incest, child pornography, and the like, to combat the sexual abuse of child and distribution of child pornography.

2. On March 21, 2023, at approximately 1030 A.M., the UC received a private message from Kik user "funj1007" (display name "John K"), later identified as Timothy E. MARIS. The user stated that he was from Palm Beach, Florida and asked the UC if she was a mother, if she had "any limits", and if she was an "open mom." He stated that he was "looking

for a daughter to have lots of fun with." He added that he was from Royal Palm Beach, recently moved from Boca Raton, was 29 years old, and worked in real estate. MARIS sent a "live photo"[1] showing the intersection he was driving through at Benoist Farms Rd (in the Royal Palm Beach area) to prove he is from the local area.

3. On the same date, the UC asked if MARIS cared about age, to which he said, "Not at all." The UC informed him that her daughter was 8 years old. MARIS asked the UC what she wanted him to do, how "far" she wanted him to go, and if this would be a "one time or long term" thing. Without answering the question, the UC asked MARIS what he would like to do and how he would go about things. The UC advised MARIS it would be the UC choosing who would be with Child1 and the UC advised that she does not want to risk any danger or pain to Child1. MARIS responded, "Well obviously we need to start things off slow. And work our way into things. Not just jam stuff right away first time. Also need to work with her to be comfortable to try new stuff. So start by spending time together and when it starts, day one do bare minimum, next day go a bit more, and so on and so forth until we reach a place where everyone is happy with the situation."

4. MARIS sent the UC a photo of himself. The photo depicted a white male with brown hair, shirtless, wearing black pants and sneakers. The photo was taken in the reflection of a mirror in a locker room. The camera flash is covering his face.

5. Beginning then in February 2023 and continuing through April 2024 MARIS repeatedly re-initiated contact with the UC and tried to set up a meeting with the UC where they could meet in person and discuss his plans with Child1. MARIS utilized multiple Kik accounts

---

[1] When Kik users take and send a new photo or video using the camera within the Kik application rather than an old/already-existing photo or video, the Kik application adds the word "Camera" under the photo or video that the Kik user sent. If a Kik user receives a photo or video from someone and it says "Camera" underneath it, the Kik user knows that the photo or video was just taken in real time. Kik users often request live photos or videos from one another to prove that the other user is a "real" person.

including funj1902 and funj1904. Amount his many sexual descriptions of what he wanted to do with Child 1, MARIS stated in April 2023, "I think you should let me come over. Even if she's asleep. To see her and also talk. And maybe give her an unexpected sleeping 'shower' lol". On November 27, 2023, at about 9:18am, MARIS messaged the UC again and stated, "Just imagine coming home every day from work and you just see me on the couch with [Child1] on top being filled up. Welcoming you home".

6. On September 21, 2023, at about 1:06 P.M., MARIS responded by sending an image of cartoon child pornography. The image depicted a small, fully nude white juvenile female who appeared to be under 12, laying on her stomach on a bed, while a large, nude adult white male straddles over her from behind with one arm wrapped around her body while penetrating her vagina with his penis. The next day, MARIS commented about the picture: "It's just like me and [Child1]." MARIS then told the UC that she should show him "more of [Child1]". The UC told MARIS that he could have seen Child1 for himself. MARIS responded, "I'm still working towards that. What are you doing tomorrow?"

7. Maris distributed at least seven (7) visual depictions that depicted minors engaging in sexually explicit conduct, which was obscene, the nature of which was known to the defendant including that it was of a child, and transported in interstate commerce.

8. After many more discussions, the UC and MARIS met at a Dunkin Donuts in West Palm Beach, FL on December 7, 2023, at about 12:49 pm. The UC was clearly able to positively identify the male as MARIS. The UC said "Hi. John?" MARIS stopped walking and started to blade his body away as if he was about to leave. The UC provided her UC first name. MARIS then approached the UC. They shook hands and said it was nice to meet each other. The UC observed that MARIS was obviously nervous, as he was shaking, breathing heavily, looking around into the

parking lot, and also looking at the UC up and down as if he were looking for anything pointing to this being a law enforcement operation.

9. MARIS stated, "This is all I'm good for right now." The UC asked if he wanted to talk at all, and that it was small inside of the Dunkin Donuts so it was probably better to talk outside. MARIS said, "Uh…" The UC told him that she was nervous also, and that there were seats outside with nobody around. MARIS said no, and "I just wanted to show you that I'm real." MARIS again said that he just wanted to have an initial meet to show each other that they were "real" and then they could talk more. The UC asked him if he was a painter since there was paint all over his shoes. He said, "Yeah, for today." MARIS took a deep breath and said that he was going to go before he "loses his mind." He said that they would just message on Kik for now.

10. At about 12:53pm, MARIS messaged the UC on Kik again and said, "Sorry for not staying. Just super nervous out in public. Heart racing and all that. Have a lot to lose". At about 1:08pm, he wrote, "So you trust me more now?" The UC told him that she did and asked if he trusted her more now too. MARIS wrote, "Yeah. But we need to talk about a plan now". The UC said that was what she thought they were going to do today in person. MARIS asked the UC, "How much have you done with her?" (referring to Child1). He also asked why the UC does not have sex. The UC wrote back that she has had many bad experiences with men and that she is not into men that much anymore. At about 1:23pm, MARIS wrote, "Ok I get it. I'm not like that btw. But think about it. Wouldn't you wanna suck the dick that's been in your daughter?" The UC told him that she would watch. MARIS said, "Idk. You're pretty attractive. We might start something all 3 of us. Imagine all snuggled up with nothing but blankets. All 3 in bed". The UC said that this was not really her plan and asked him not to push her. She then told him that if he changed his mind about the UC and Child1, to just let her know and that it was okay. MARIS said, "I didn't change

my mind. I just got too nervous out in public I couldn't stay. Watched too many bad things happen". He then asked the UC how she plans to introduce him to Child1.

11. On February 13, 2024, after 9:00 A.M., MARIS sent the UC two computer-generated images and one video. The video was approximately eighty-three seconds long and depicted a fully nude, pre-pubescent female straddled over a fully nude, adult male. The child performed oral sex on the adult male as he held her head with both hands while thrusting in her mouth. The adult then laid behind the child while penetrating her vagina with his penis, while also holding one of her legs up. The male then laid on his back, straddled the child above him, and continued to penetrate her vagina has he held his hands around the child's neck. The video contained audio of the child while being penetrated. This is the criminal act of Count 3 of the Superseding Information.

12. After many days of communicating about it, February 14, 2024 was scheduled for MARIS to meet the UC and Child1 at 1:30 P.M. at a specific residential location in West Palm Beach, Florida. MARIS explained his hesitation in coming to the location because the UC would not succumb to his requests for "live" photos of Child1 at the residential location. MARIS did not travel to meet the UC and Child1 that day.

13. Through a series of subpoenas to Kik, Comcast, Yahoo!, Verizon as well as surveillance and a vehicle GPS tracker, MARIS was confirmed and identified as the user of these Kik accounts.

14. On April 8, 2024, HSI located MARIS at his girlfriend's residence. Upon exiting the residence and entering his car, he was taken into custody on a Federal complaint that charged him with a total of seven (7) counts of distribution of obscene visual representations of the sexual abuse of children including that which is contained in Count 3 of the superseding information.

From MARIS' car in which he was arrested and his residence, HSI secured two phones belonging to MARIS.

15.     On his iPhone 6, HSI uncovered his communication with multiple individuals professing to be minors. Beginning on January 26, 2016 and continuing through February 12, 2017, MARIS engaged in conversation with a child (hereinafter Minor Victim 1 or MV1) who identified herself as a 12-years-old. MV1 sent a photograph of two girls in "cheerleading" outfits and professed to be one of the two girls, both of whom appeared to be approximately 12-years-old. MARIS referred to MV1 as his "little whore". MARIS at first asked for nude images of MV1 and later demanded the nude images. In regards to Count 1 of the superseding information, In response, MV1 sent a "selfie" photograph of girl who appeared to be 12 years old, nude, holding her phone in one hand her hand, and the other hand touching her visible vagina. Upon receiving the same, MARIS responded, "oh yeah" and "how tight is your pussy". MARIS told MV1 he would pick her up so she could give him oral sex in the car and then have sex in the park. Also in regards to Count 1 of the superseding information, MARIS requested her address, and said, "send me pics of your asshole, pussy, and titties." In December, MARIS questioned whether MV1 was real, to which she responded, that she was real and she turned 13 years old; MARIS did not doubt her again. Finally, in regards to Count 1 of the superseding information, MARIS asked for a photo of her "tits or ass". MV1 asks if it should be a "live" photo, noting that "it's illegal". Maris responded, "you fuck older guys all the time" to which MV1 responded that it is safer in person. MARIS believed MV1 to be a real child from whom he requested the production of child pornography.

16.     Also on MARIS' iPhone 6, between October 14, 2016 and January 1, 2017, MARIS engaged in chat with Minor Victim 2 or MV2. In this communication, MARIS bragged about his

sexual exploitation of children, sharing photos he received from other purported children. MV2 identified herself as a 16-year-old. MARIS sent multiple Dropbox links to MV2, to which the later asked MARIS if he had pictures of girls under age 10, to which MARIS responded, "not anymore". MARIS then sent the image he received from MV1 (above) to MV2. MARIS bragged about several underage girls he has had sex with. MARIS then sent a photo of what appeared to be a young girl (age unknown) with her vaginal and rectal area exposed for the camera. In regards to Count 2 of the superseding information, and in response to this pic, MV2 sent a child pornography video of an infant being vaginally raped. MARIS knowingly received this child pornography video. The conversation that followed included them each sending Dropbox links that purported to contain child pornography. MARIS, apparently having been able to access the MV2's Dropbox link, asked the age of the girls in the Dropbox link, to which MV2 responded, "yes nearly all from school.

17.     By agreeing to these facts, MARIS agrees the following elements of attempted production of child pornography, charged in Count 1 of the Superseding Information, would be proven beyond a reasonable doubt had this case gone to trial:

   a. the Defendant knowingly intended to commit the crime of production of child pornography; and
   b. the Defendant's intent was strongly corroborated by his taking a substantial step toward committing the crime.
   c. an actual minor, that is, a real person who was less than 18 years old, was depicted;
   d. the Defendant used, persuaded, induced, or enticed, the minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct; and
   e. either (a) the Defendant knew or had reason to know that the visual depiction would be mailed or transported in interstate or foreign commerce; (b) the visual depiction was produced using materials that had been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer; or (c) the visual depiction was mailed or actually transported in interstate or foreign commerce.

18.     By agreeing to these facts, MARIS agrees the following elements of receipt of child

pornography, charged in Count 2 of the Superseding Information, would be proven beyond a reasonable doubt had this case gone to trial:

    a. the Defendant knowingly received an item or items of child pornography;

    b. the items of child pornography had been transported, shipped or mailed in interstate or foreign commerce including by computer; and

    c. when the Defendant received the items, the Defendant believed the items were or contained child pornography.

19. By agreeing to these facts, MARIS agrees the following elements of distribution of obscene visual representations of the sexual abuse of children, charged in Count 3 of the Superseding Information, would be proven beyond a reasonable doubt had this case gone to trial:

    a. the defendant knowingly distributed a visual depiction of any kind,

    b. the visual depiction depicts a minor engaging in sexually explicit conduct,

    c. the visual depiction is obscene;

    d. the defendant knew at the time of distribution the general nature of the contents of the visual depiction;

    e. that the defendant knew, at the time of such distribution, the visual depiction depicted a minor; and

    f. the visual depiction involved in the offense was transported in interstate commerce.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: July 8, 2024    By: _____
GREGORY SCHILLER
ASSISTANT UNITED STATES ATTORNEY

Date: July 8, 2024    By: _____
MARK EIGLARSH
ATTORNEY FOR THE DEFENDANT

Date: July 8, 2024    By: _____
TIMOTHY E. MARIS
DEFENDANT